# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Barbara Fawcett, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Citizens Bank, N.A.,<br><br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: Case No.: 4:17-cv-11043-DHH<br>:<br>:<br>:<br>:<br>: |

## DEFENDANT CITIZENS BANK, N.A.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
## DISMISS AND/OR STAY AND TO COMPEL ARBITRATION

Brenda R. Sharton (BBO# 556909)
Stephanie M. Aronzon (BBO# 679467)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:  617.570.1000
Fax.:  617.523.1231
bsharton@goodwinlaw.com
saronzon@goodwinlaw.com

*Counsel for the Defendant*

Dated:  September 7, 2017

## TABLE OF CONTENTS

**Page**

**INTRODUCTION** ............................................................................................................................. 1
**BACKGROUND** ............................................................................................................................... 2
    I.      The Plaintiff's Allegations ................................................................................................ 2
    II.     The Plaintiff's Agreement with Citizens ......................................................................... 3
**ARGUMENT** ..................................................................................................................................... 5
    III.    Fawcett Agreed to Individually Arbitrate Her Claim. ...................................................... 5
          A.     Fawcett and Citizens are Parties to a Valid and Binding Arbitration Agreement. .. 6
          B.     Fawcett Waived Her Right to Class Arbitration. ..................................................... 9
    IV.    Fawcett Has Failed to State a Claim for Violation of the National Bank Act .................... 9
    **CONCLUSION** ........................................................................................................................ 14

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
  133 S.Ct. 2304 (2013) ................................................................................................................9

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..................................................................................................................9

*Bekele v. Lyft, Inc.*,
  199 F. Supp. 3d 284, 293 ..........................................................................................................7

*Cargile v. JPMorgan Chase & Co.*,
  No. 09-14317, 2010 WL 5491200 (E.D. Mich. Nov. 23, 2010) ..............................................12

*Danley v. Encore Capital Grp., Inc.*,
  No. 16-1670, 2017 WL 710470 (6th Cir. Feb. 22, 2017) ..........................................................6

*Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*,
  638 F.3d 367 (1st Cir. 2011) .....................................................................................................6

*DIRECTV, Inc. v. Imburgia*,
  136 S.Ct. 463 (2015) .................................................................................................................9

*Employers Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*,
  744 F.3d 25 (1st Cir. 2014) .......................................................................................................6

*Farrell v. Bank of Am., N.A.*,
  No 17-55847 (9th Cir. 2017) ...................................................................................................13

*Farrell v. Bank of Am., N.A.*,
  No. 3:16-CV-00492-L-WVG, 2017 WL 1325572 (S.D. Cal. Apr. 11, 2017) .........................13

*Farrell v. Bank of America, N.A.*,
  224 F. Supp. 3d 1016, 1022 (S.D. Cal. Dec. 16, 2016) .....................................................12, 13

*Katz v. Pershing, LLC*,
  672 F.3d 64 (1st Cir. 2012) .......................................................................................................9

*McGee v. Bank of Am., N.A.*,
  No. 15-60480-CIV, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd,* No.
  15-13855, 2017 WL 191917 (11th Cir. Jan. 18, 2017) ......................................................12, 13

*Nicolas v. Deposit Guar. Nat'l Bank*,
  182 F.R.D. 226 (S.D. Miss. 1998) ...........................................................................................12

*Oliveira v. New Prime, Inc.*,
   141 F. Supp. 3d 125, 132 (D. Mass. 2015) ...................................................................................6

*PowerShare, Inc. v. Syntel, Inc.*,
   597 F.3d 10 (1st Cir. 2010) ..............................................................................................7, 8

*Private Jet Servs. Grp., Inc. v. Marquette Univ.*,
   No. 14-CV-436-PB, 2015 WL 2228041 (D.N.H. May 12, 2015) ............................................6

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .........................................................................................................6

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ..............................................................................................10

*Shaw v. BOKF, N.A.*,
   No. 15-CV-0173-CVE-FHM, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015) .................12, 13

*Soto v. Bank of Lancaster Cty.*,
   No. 08-CV-1907, 2010 WL 1257666 (E.D. Pa. Mar. 30, 2010) .............................................12

*In re TD Bank, N.A.*,
   150 F. Supp. 3d 593, 641 (D.S.C. 2015) ..........................................................................12, 13

*Terrell v. Hancock Bank*,
   7 F. Supp. 2d 812 (S.D. Miss. 1998) ..................................................................................12

*Video Trax, Inc. v. NationsBank, N.A.*,
   33 F. Supp. 2d 1041 (S.D. Fla. 1998), *aff'd,* 205 F.3d 1358 (11th Cir. 2000) .......................12

*In re Wash. Mut. Overdraft Prot. Litig.*,
   No. CV 03-2566 ABC (RCX), 2004 WL 5046210 (C.D. Cal. Apr. 26, 2004),
   *aff'd in relevant part, rev'd in part on other grounds,* 201 F. App'x 409 (9th
   Cir. 2006) .......................................................................................................................12

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 2 ............................................................................................5

National Bank Act, 12 U.S.C. §§ 85-86 ..............................................................................2, 10, 13

**Other Authorities**

12 C.F.R. § 7.4001 ..................................................................................................................10, 13

12 C.F.R. § 7.4002 ..........................................................................................................................10

OCC Final Rule, 66 Fed. Reg. 34784 (July 2, 2001) ....................................................................10

FED. R. CIV. P. 12(b)(6) ..................................................................................................9

OCC Inter. Ltr. No. 1082, 2007 WL 5393636 (May 17, 2007)....................................................11

Defendant Citizens Bank, N.A. ("Citizens") respectfully submits this memorandum of law in support of its motion to compel Plaintiff to individually arbitrate her claim, to dismiss or stay Plaintiff's claim pending arbitration, or in the event that this Court does not compel the parties to arbitrate, to dismiss Plaintiff's Class Action Complaint ("Complaint") for failure to state a claim.

## INTRODUCTION

Plaintiff's purported class action Complaint is not only flawed as a matter of law, but also improperly seeks to circumvent the clear terms of the parties' Arbitration Agreement. In that Agreement, Plaintiff, a Citizens Bank customer, agreed unequivocally to arbitrate any disputes with Citizens on an individual basis. Further, under the express terms of the contract, any questions regarding the enforceability or scope of that agreement must be resolved by the arbitrator. Instead of abiding by that Agreement, Plaintiff has improperly brought this litigation, unnecessarily expending both this Court's and Citizens' resources. This Court should either dismiss Plaintiff's case in its entirety, or stay it pending arbitration of the dispute.

Even in the unlikely event this Court were to consider the substance of Plaintiff's allegations, the Complaint should be dismissed because Plaintiff's one and only claim fails as a matter of law. Specifically, Plaintiff alleges that certain sustained overdraft fees charged by Citizens should be considered interest under the National Bank Act, and that the fees charged violate the interest rate usury provisions of that Act. But, as the Office of the Comptroller of the Currency ("OCC") has determined, sustained overdraft fees *are not* interest under the National Bank Act, are not subject to the Act's usury provision, and in fact are permitted non-interest charges. Further, the overwhelming majority of Federal courts who have addressed the same erroneous claim as Plaintiff's have deferred to the OCC's interpretation and dismissed the claim. This Court should do the same.

# BACKGROUND[1]

## I.     The Plaintiff's Allegations

Plaintiff Barbara Fawcett ("Fawcett"), a customer of Citizens', brings this purported class action claiming that Citizens' practice of charging sustained overdraft fees violates the National Bank Act, 12 U.S.C. §§ 85-86. *See* Complaint ¶¶ 83-87. The Complaint's allegations describe Citizens' overdraft practices: When a Citizens customer overdraws his bank account *(i.e.,* the account has a negative balance), Citizens will charge the customer a $35.00 overdraft fee for each transaction that is paid from the account while the account is overdrawn. *Id.* ¶ 19. If a customer's account remains overdrawn for four consecutive business days, Citizens will charge the customer a $30.00 flat fee because the account remained overdrawn (a so-called "sustained" overdraft fee). *Id.* ¶ 21. If a customer's account remains overdrawn for another three consecutive business days after that, Citizens will charge the customer an additional $30.00 sustained overdraft fee. *Id.* Finally, if a customer's account remains overdrawn for yet another three consecutive business days, Citizens will charge the customer another $30.00 sustained overdraft fee. *Id.* The Complaint's allegations also describe Citizens' practices when a customer overdrew his bank account before March 8, 2016: In addition to the $35.00 overdraft fee, if a customer's account remained overdrawn for three consecutive business days, Citizens would charge the customer a $6.99 "sustained" overdraft fee, and charge an additional $6.99 "sustained" overdraft fee each additional business day that the account remained overdrawn up to ten days. *Id.* ¶¶ 24-25.

---

[1] The facts set forth in this Memorandum are taken from the Complaint solely for the purposes of this Motion. In reciting these facts, Citizens does not admit that any allegations in the Complaint are true or accurate.

Fawcett alleges that Citizens charged her sustained overdraft fees, but also alleges that those fees should not be characterized as such; instead, Fawcett claims those fees should be characterized as interest on the extension of credit to overdrawn customer accounts. *Id.* ¶¶ 31, 63-66. Fawcett further claims that such sustained overdraft fees, characterized as interest, are usurious in violation of the National Bank Act because they exceed the 21% maximum statutory annualized rate of interest applicable to Citizens. *Id.* ¶¶ 83-87.

**II.** **The Plaintiff's Agreement with Citizens**

What Fawcett's Complaint has not addressed, or even mentioned, is the Personal Deposit Account Agreement ("PDAA") she entered into with Citizens – the express terms of which underlay the basis for Citizens' Motion to Compel Arbitration. The PDAA as amended from time to time, governs the terms and conditions of Fawcett's bank account, including Citizens' ability to charge fees. A copy of the PDAA that is currently in effect (and that was in effect at the time that Fawcett incurred sustained overdraft fees) is attached as Exhibit B to the Crowe Declaration.

The PDAA contains an "Arbitration Agreement" between "you [the customer] and us [Citizens]." Ex. B at 28. The beginning of the Arbitration Agreement warns the customer, in all capital letters and darker text, to "READ THIS SECTION CAREFULLY AS IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL DISPUTES BETWEEN YOU AND US ARE RESOLVED." *Id*. The Arbitration Agreement then explains, with a bold heading, that Citizens and the customer both agree to binding arbitration of all disputes that relate in any way to the PDAA or their deposit relationship:

> **Binding Arbitration**
> If you have a dispute with us, . . . you and we agree that upon
> demand by either you or us, the dispute will be resolved through
> the arbitration process as set forth in this part. A "claim" or
> "dispute," as used in this Arbitration Agreement, is any unresolved

3

> disagreement between you and us, arising from or relating in any way to the Account Agreement (including any renewals, extensions, addendums or modifications) or the deposit relationship between us.  It includes any disagreement relating in any way to services, accounts or any other matters . . . . Claims are subject to arbitration, regardless of on what theory they are based, whether they seek legal or equitable remedies, or whether they are common law or statutory (federal or state) claims.  Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. Disputes include disagreements about the meaning, application or enforceability of this arbitration agreement.
>
> **TRIAL WAIVER**
> YOU AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A JURY TRIAL AND TRIAL BEFORE A JUDGE IN A PUBLIC COURT.

*Id.* at 29.

The Arbitration Agreement also contains a conspicuous class action waiver, in which Citizens and the customer agree not to pursue class claims, whether in arbitration or in court:

> **CLASS ACTION AND CLASS ARIBITRATION [sic] WAIVER**
> NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY COURT ACTION OR ARBITRATION, OR TO INCLUDE IN ANY COURT ACTION OR ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY, UNLESS THOSE PERSONS ARE JOINT ACCOUNT OWNERS OR BENEFICIARIES ON YOUR ACCOUNT.  This is so whether or not the claim has been assigned.

*Id*.

Importantly, the Arbitration Agreement provides customers with the ability to opt out of its provisions.  At the beginning of the Arbitration Agreement, the customer is notified in bold: **"You have the right to cancel or opt out of this Arbitration Agreement as set forth below."**

4

*Id.* at 28. Consistent with this notification, the Arbitration Agreement provides clear and bolded instructions as to how the customer can opt out of the Arbitration Agreement. *Id.* at 31.

Fawcett opened her Citizens account on July 11, 2013. Crowe Decl. ¶ 2, Ex. A. At the time that Fawcett opened her account, she signed a signature card that provided:

> By signing below, I acknowledge that I have read and understood the Bank's Deposit Account Agreement and related fee schedule… each as amended from time to time (all collectively and each individually referred to as "the Agreement"). By signing below, I agree to all the terms of the Agreement.

Crowe Decl., Ex. A. The PDAA, which included the arbitration provision described above, was effective on Fawcett's account over the entire time period during which the sustained overdraft fees alleged in the Complaint were incurred. Crowe Decl. ¶¶ 6-9, Ex. B. Fawcett never sent Citizens notice that she was cancelling or opting out of the Arbitration Agreement, and continued to make use of Citizens' deposit account services. Crowe Decl. ¶¶ 10-11.

## ARGUMENT

### III. Fawcett Agreed to Individually Arbitrate Her Claim.

By the clear and unequivocal terms of the PDAA Fawcett entered into with Citizens, Fawcett agreed that "if [she has] a dispute… the dispute will be resolved through the arbitration process…." Ex. B at 29. In that same agreement, she agreed to arbitrate her claim on an individual basis. Specifically, she agreed to the express term that "[n]either you nor we shall be entitled to join or consolidate disputes by or against others in any court action or arbitration…." *Id.* Pursuant to the Federal Arbitration Act ("FAA"), any agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a plaintiff's complaint asserts a claim that the parties agreed to arbitrate, the court must compel arbitration of those claims and stay the case.

5

*Id.* § 3.  Alternatively, the court has discretion to dismiss the case outright if all claims are arbitrable.  *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.,* 638 F.3d 367, 372 (1st Cir. 2011) ("'Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable.'" (quoting *Next Step Med. Co. v. Johnson & Johnson Int'l,* 619 F.3d 67, 71 (1st Cir. 2010)).  This Court should, therefore, dismiss Plaintiff's class allegations, compel Fawcett to individually arbitrate her claim, and dismiss or stay this case pending arbitration.

      A.    **Fawcett and Citizens are Parties to a Valid and Binding Arbitration Agreement.**

The Arbitration Agreement that Fawcett entered into with Citizens is valid and binding, and even if there were a question as to the agreement's enforceability – which there is not – that is a question for the arbitrator because the Agreement contains a delegation clause.  Typically, a defendant in a motion to compel arbitration must demonstrate "that a valid agreement to arbitrate exists, that the [defendant] is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Employers Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.,* 744 F.3d 25, 27 (1st Cir. 2014) (internal quotations and citations omitted).  However, arbitration agreements may include a clause in which the parties agreed to delegate issues relating to the validity of the agreement to the arbitrator (a "delegation clause").  *See Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 68-71 (2010) (finding such delegation clauses permissible); *Oliveira v. New Prime, Inc.,* 141 F. Supp. 3d 125, 132 (D. Mass. 2015) ("Parties can agree to allow arbitrators [to] decide 'gateway questions of arbitrability.'" (quoting *Rent-A-Ctr.,* 561 U.S. at 68-69)); *Private Jet Servs. Grp., Inc. v. Marquette Univ.,* No. 14-CV-436-PB, 2015 WL 2228041, at *2 (D.N.H. May 12, 2015); *see also Danley v. Encore Capital Grp., Inc.,* No. 16-1670, 2017 WL 710470, at *3 (6th Cir.

Feb. 22, 2017) (noting that pursuant to *Rent-A-Center,* the arbitrator decides the validity of an arbitration agreement if the agreement includes a valid delegation provision). If an arbitration agreement contains a delegation clause, then the pertinent inquiry for the court changes: the court will address the validity and enforceability of the delegation clause, and unless found not valid or enforceable that will be the only inquiry for the court. *Bekele v. Lyft, Inc.,* 199 F. Supp. 3d 284, 293 n.3 (D. Mass. 2016) ("[t]he validity and enforceability of an arbitration agreement's delegation clause is usually a threshold issue for the court to address, and if it is valid and enforceable, it is the *only* issue the court will reach." (emphasis added)).

Here, the delegation clause within the PDAA is valid and enforceable. The PDAA not only includes an Arbitration Agreement applicable to both Citizens and Fawcett, but also clearly and unequivocally delegates to the arbitrator any issues relating to the enforceability of the Arbitration Agreement. Ex. B at 29 ("Arbitration applies to any and all such claims or disputes…. *Disputes include disagreements about the meaning, application or enforceability of this arbitration agreement*." (emphasis added)). The Arbitration Agreement was conspicuously marked in the PDAA, and Fawcett had the ability to cancel and opt out of the Arbitration Agreement (and thus, the delegation agreement). Fawcett chose not to cancel or opt out, and there is no justifiable reason to circumvent the parties' agreement and the FAA's "policy favoring arbitration." *PowerShare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 15 (1st Cir. 2010) (citations and internal quotations omitted). Moreover, Fawcett voluntarily chose to do business with Citizens, and signed a signature card affirming that she had read and agreed to the terms of the PDAA.[2] Crowe Decl. ¶¶ 4-5, Ex. A. Given that the delegation clause is valid and enforceable,

---

[2] Significantly, Fawcett continued making use of Citizens' deposit account services well after she was first charged a sustained overdraft fee, which constituted agreement to all the terms of the Agreement with Citizens. Crowe Decl. ¶¶ 7, 11, Ex. B at 2. Fawcett had the choice to close her

7

the Court should compel arbitration, dismiss or stay this case, and – while Citizens submits the Arbitration Agreement is clearly valid and enforceable – leave for the arbitrator any questions regarding enforceability or validity of the parties' Agreement.

Finally, while not necessary for this Court to decide as noted above, Fawcett's claim in this litigation – that Citizens' practice of charging sustained overdraft fees to accounts pursuant to the terms of the PDAA violates the National Bank Act – unquestionably falls within the scope of the Arbitration Agreement. The Arbitration Agreement provides that all past, present, and future federal and state claims based on any legal or equitable theory are subject to arbitration. Ex. B at 29 ("Claims are subject to arbitration, regardless of on what theory they are based, whether they seek legal or equitable remedies, or whether they are common law or statutory (federal or state) claims. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future."). This broad, overarching provision includes federal claims such as those arising out of the National Bank Act.[3] Further, even if there were a question as to whether Fawcett's claim falls within the scope of the parties' Agreement, the delegation clause also delegates issues of scope to the arbitrator. Ex. B at 29 ("Disputes include disagreements about the meaning, *application* or enforceability of this arbitration agreement." (emphasis added)). Fawcett's claim is subject to mandatory arbitration and so the Court should compel arbitration and dismiss or stay this case.

---

account and take her business to another bank, but did not do so. Instead, she continued to use Citizens' services over the entire 18 month period alleged in the Complaint. *Id.*

[3] Even if the arbitration agreement were ambiguous as to whether it applied to Fawcett's claim – which it certainly is not – this Court would have to resolve that ambiguity in favor of arbitration. *PowerShare*, 597 F.3d at 15 (Because the FAA "undeniably includes a policy favoring arbitration," any "'ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'" (alterations original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989)).

### B. Fawcett Waived Her Right to Class Arbitration.

While Fawcett purports to bring her claim as a class action, the Arbitration Agreement she entered into with Citizens includes a valid and binding class arbitration waiver. *See* Ex. B at 29. Class arbitration waivers are valid and enforceable under the FAA, and cannot be circumvented by claiming individual actions would not be cost-effective. *See, e.g., Am. Express Co. v. Italian Colors Rest.,* 133 S.Ct. 2304, 2308, 2312 (2013) (holding that the FAA does not permit courts to invalidate arbitration agreements on the ground that they do not permit class arbitration of a federal claim); *see also DIRECTV, Inc. v. Imburgia,* 136 S.Ct. 463, 466-67 (2015) (reiterating that the FAA "pre-empts and invalidates" state law that would make a class arbitration waiver unconscionable in a consumer contract of adhesion); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 336, 352 (2011) (same). Fawcett has waived her right to class arbitration. Therefore, this Court should dismiss Fawcett's class claim outright, and dismiss or stay Fawcett's claim pending arbitration.

### IV. Fawcett Has Failed to State a Claim for Violation of the National Bank Act

Fawcett's Complaint fails as a matter of law. Fawcett's one and only claim for violation of the National Bank Act is founded on the legal conclusion that sustained overdraft fees constitute interest – but that is demonstrably incorrect under the National Bank Act and the OCC's implementation of the Act.[4] A defendant may move to dismiss a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *see also Katz v. Pershing, LLC,* 672 F.3d 64, 72-73 (1st Cir. 2012) (finding a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'") (internal quotations and citations omitted). In determining whether to grant a motion to dismiss, the Court will "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or

---

[4] The OCC is charged with implementing the National Bank Act.

merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Fawcett's Complaint has failed to state a claim, and only offers erroneous legal conclusions. Therefore, this Court should dismiss this action in its entirety.

The National Bank Act, and its implementing regulations, permit national banking associations such as Citizens to both charge non-usurious interest, 12 U.S.C. §§ 85-86, and certain non-interest charges and fees including deposit account service charges. 12 C.F.R. § 7.4002(a). "Interest" as it is used in the National Bank Act, is defined as "any payment compensating a creditor . . . for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended." 12 C.F.R. § 7.4001(a). "Interest" includes certain creditor-imposed not sufficient funds (NSF) fees, which are charged when a borrower tenders payment on a debt with a check drawn on insufficient funds. *Id.* But, a national bank's non-interest fees and charges such as deposit account service charges *are not* "interest" under 12 U.S.C. § 85 and 12 C.F.R. § 7.4001, and so are not subject to the National Bank Act's usury limitations. *See* 12 C.F.R. § 7.4002(c).

The OCC, in implementing the National Bank Act, has concluded expressly that overdraft fees, including sustained overdraft fees, *do not* fall under the definition of "interest" and thus are not subject to the National Bank Act's usury limitations. In 2001, the OCC published a final rule that, *inter alia,* amended Section 7.4001(a) to "clarif[y] the scope of the term 'NSF' fees for the purpose of 12 U.S.C. § 85." Investment Securities; Bank Activities and Operations; Leasing, 66 Fed. Reg. 34784, 34786 (July 2, 2001). The 2001 amendment to Section 7.4001(a) (which appears in the current, operative version of that Section), elucidates that overdraft fees are deposit account service charges, not interest:

> The [OCC] invited comments on a change to § 7.4001(a) that
> would clarify that the term "NSF fees" includes only those fees

10

> imposed by a creditor bank when a borrower attempts to pay an obligation to that bank with a check drawn on insufficient funds. *Fees that a bank charges for its deposit account services— including overdraft and returned check charges—are not covered by the term "NSF fees" as that term is used in § 7.4001(a).* The OCC received no objections on that proposed change, and, therefore, we adopt it in the final rule as proposed.

*Id.* at 34786 (emphasis added).

Several years later, the OCC issued an interpretive letter that reiterated that overdraft *and* sustained overdraft fees are not "interest." OCC Inter. Ltr. No. 1082, 2007 WL 5393636 (May 17, 2007). OCC Interpretive Letter No. 1082 responded to a bank's request for advice as to whether it could, *inter alia,* charge overdraft and sustained overdraft fees to deposit accounts. *Id.* at *1 n.3 (indicating that the bank sought advice as to its ability to charge overdraft *and* continuous (or sustained) overdraft fees). In responding that the bank could properly impose overdraft and sustained overdraft fees, the OCC noted:

> Creating and recovering overdrafts have long been recognized as elements of the discretionary deposit account services that banks provide. . . .
>
> A bank's authority to provide products or services to its customers necessarily encompasses the ability to charge a fee for the product or service. This ability to charge a fee for the bank's services is expressly reaffirmed in 12 C.F.R. § 7.4002(a).

*Id.* at *2. The OCC concluded that as long as the bank imposes overdraft fees in accordance with safe and sound banking principles, then "there is no supervisory impediment to the bank exercising is discretionary authority to charge non-interest fees and charges – such as the overdraft fees at issue here – pursuant to section 7.4002(a)." *Id.* at *3.

It is clear then, that the OCC does not consider sustained overdraft fees to be interest under the National Bank Act, and so sustained overdraft fees are not considered to be subject to the National Bank Act's usury provision. While courts within the First Circuit have not yet had

11

an opportunity to consider whether overdraft fees constitute "interest" under the National Bank Act, numerous courts in other jurisdictions have accorded deference to the OCC's interpretation and have concluded that overdraft fees are not "interest."[5] *E.g., In re TD Bank, N.A.,* 150 F. Supp. 3d 593, 641 (D.S.C. 2015); *Shaw v. BOKF, N.A.,* No. 15-CV-0173-CVE-FHM, 2015 WL 6142903, at *4 (N.D. Okla. Oct. 19, 2015); *McGee,* 2015 WL 4594582, at *2; *Cargile,* 2010 WL 5491200, at *5; *Soto,* 2010 WL 1257666, at *2; *In re Wash. Mut. Overdraft Prot. Litig.,* No. CV 03-2566 ABC (RCX), 2004 WL 5046210, at *4-5 (C.D. Cal. Apr. 26, 2004), *aff'd in relevant part, rev'd in part on other grounds,* 201 F. App'x 409 (9th Cir. 2006); *Video Trax, Inc. v. NationsBank, N.A.,* 33 F. Supp. 2d 1041, 1059 (S.D. Fla. 1998), *aff'd,* 205 F.3d 1358 (11th Cir. 2000); *Terrell v. Hancock Bank,* 7 F. Supp. 2d 812, 816 (S.D. Miss. 1998); *Nicolas v. Deposit Guar. Nat'l Bank,* 182 F.R.D. 226, 231-32 (S.D. Miss. 1998).

Moreover, in several of these decisions, the courts explicitly held that *sustained* overdraft fees – fees charged because the account remained overdrawn – do not constitute "interest" under the National Bank Act. *E.g., McGee,* 2015 WL 4594582, at *2-3 ("The extended overdrawn balance charges in this case… are not interest under the ordinary meaning of the term, or under the NBA."); *In re TD Bank,* 150 F. Supp. 3d at 641; *Shaw,* 2015 WL 6142903, at *4; *see also Cargile,* 2010 WL 5491200, at *5.[6] These courts all held that sustained overdraft fees neither fit

---

[5] The OCC's interpretation of the National Bank Act and its implementing regulations is entitled to substantial deference. *See, e.g., McGee v. Bank of Am., N.A.,* No. 15-60480-CIV, 2015 WL 4594582, at *2 (S.D. Fla. July 30, 2015), *aff'd,* No. 15-13855, 2017 WL 191917 (11th Cir. Jan. 18, 2017) (citing *Smiley v. CitiBank, N.A.,* 517 U.S. 735, 739 (1996)); *Cargile v. JPMorgan Chase & Co.,* No. 09-14317, 2010 WL 5491200, at *4 n.3 (E.D. Mich. Nov. 23, 2010), *R. &. R. adopted,* 2011 WL 17608 (Jan. 4, 2011); *Soto v. Bank of Lancaster Cty.,* No. 08-CV-1907, 2010 WL 1257666, at *1 (E.D. Pa. Mar. 30, 2010).

[6] We are aware of only one court, *Farrell v. Bank of America, N.A.*, 224 F. Supp. 3d 1016, 1022 (S.D. Cal. Dec. 16, 2016), to have ever concluded than an overdraft fee constitutes "interest" under the National Bank Act. Notably, however, the *Farrell* decision did not address the fact that OCC Interpretive Letter No. 1082 explicitly dealt with sustained overdraft fees. The court,

12

within the traditional definition of interest, nor constitute charges made in connection with a credit transaction, as is required to meet the definition of "interest" under 12 U.S.C. § 85 and 12 C.F.R. § 7.4001. *In re TD Bank,* 150 F. Supp. 3d at 641-42 ("In general, the nature of interest is the application, over time, of an established rate to an identified principal. In contrast, the sustained overdraft fee is a flat . . . fee, applied universally after [a number of] consecutive days of negative balance and without regard to the total amount of the negative balance or fluctuations within that negative balance during the . . . period."); *Shaw,* 2015 WL 6142903, at *4 ("Plaintiff did not borrow money or obtain a line of credit from defendant. Instead, she maintained a checking account . . . and overdrafted her account, and BOKF provided the service of covering plaintiff's overdrafts. She was not charged an interest rate for the use of money, but she was charged fees for causing her account to become overdrafted and for failing to remedy to status of her account as overdrafted within five business days. BOKF charged plaintiff a flat fee for a service and not an interest rate for overdrafting her checking account."); *McGee,* 2015 WL 4594582, at *3 (holding that sustained overdraft charges "are flat fees contingent upon a customer's failure to remedy an overdrawn account, rather than payment for the use of money, and are not 'interest' within the ordinary meaning of the word" and "do not rise from a credit transaction, and [thus] are not interest under 12 U.S.C. § 85.").

These well-reasoned decisions confronted the very same allegations made by Fawcett's Complaint: the assessment of flat-fee sustained overdraft charges, the amount of which depends only on the number of business days the account remained overdrawn. Complaint ¶¶ 23, 31.

---

recognizing that its decision was at odds with that of every other jurisdiction to have considered the issue, recently granted the defendant's motion for an interlocutory appeal, which was filed in June, 2017 and remains pending. *See Farrell v. Bank of Am., N.A.*, No. 3:16-CV-00492-L-WVG, 2017 WL 1325572, at *2 (S.D. Cal. Apr. 11, 2017); *Farrell v. Bank of Am., N.A.*, No 17-55847 (9th Cir. 2017). As such, this Court should accord no weight to the outlier *Farrell* decision.

13

This Court should find, consistent with the OCC's guidance and virtually every one of the many other courts which have addressed this very issue, that sustained overdraft fees do not constitute "interest" under the National Bank Act and therefore are not subject to the National Bank Act's usury provisions.

## CONCLUSION

For the foregoing reasons, Citizens respectfully requests that this Court compel Plaintiff to individually arbitrate her claim and dismiss or stay this case pending arbitration. In the event that this Court does not compel the parties to arbitrate, Citizens requests that this Court dismiss Plaintiff's Complaint for failure to state a claim.

Dated: September 7, 2017

Respectfully Submitted,

CITIZENS BANK, N.A.,

By its attorneys,

/s/ Brenda R. Sharton
Brenda R. Sharton (BBO# 556909)
Stephanie M. Aronzon (BBO# 679467)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: 617.570.1000
Fax.: 617.523.1231
bsharton@goodwinlaw.com
saronzon@goodwinlaw.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

    I hereby certify that I filed the foregoing through the ECF system on the 7th day of September, 2017, and that notice will be sent electronically to all counsel who are registered participants and paper copies will be sent to those indicated as non-registered participants.

                                       /s/ Brenda R. Sharton
                                         Brenda R. Sharton