# United States District Court
# District of Massachusetts

| | |
|---|---|
| Barbara Fawcett, Individually and on behalf of all Others similarly situated,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITIZENS BANK, N.A.,<br>　　　　　Defendant. | CIVIL ACTION<br>No. 17-11043-TSH |

## MEMORANDUM OF DECISION AND ORDER
### February 27, 2018

**HILLMAN, D.J.**

### Background

Plaintiff, Barbara Fawcett ("Fawcett" or "Plaintiff") has filed suit, individually and on behalf of other similarly situated persons, against Citizens Bank, N.A. ("Citizens") alleging a claim for violation of the National Bank Act, 12 U.S.C. § 85 (the "Act"). More specifically, Fawcett alleges that Citizen violated the Act by mischaracterizing charges to her account as "Sustained Overdraft Fees," which were in fact interest charges with an annual rate of interest that exceeded the rate permitted to be charged under the Act.

This Order addresses Plaintiff's Motion for Class Certification And To Hold Motion In Abeyance Pending Class Discovery (Docket No. 5), and Defendant Citizen Bank, N.A.'s Motion To Dismiss And/Or Stay And To Compel Arbitration (Docket No. 12).

## **Discussion**

## A Summary of Fawcett's Claim

When a Citizens Bank checking account customer incurs a debit to their account (such as a check, ATM withdrawal, or debit card transaction) which exceeds the amount of money in that account, and Citizens honors the debit (*i.e.*, pays the check, permits the ATM withdrawal, or pays the debit card transaction) and charges the customer an "Overdraft Fee of $35." If Citizens returns a check presented for payment by one of its customers due to "insufficient funds", *i.e.*, does not honor the check, it charges $35 against the customer's account, which Citizens refers to as a "Returned Item Fee."

If Citizens returns the check due to insufficient funds, the $35 Returned Item Fee is the only fee Citizens Bank charges as a result of a check having been presented for payment which exceeded the balance remaining in the account. If, however, Citizens honors an overdraft by advancing the deficiency to the customer, and if the customer does not repay that advance (by depositing sufficient funds into the account to bring the account balance positive or at least zero) within a very short period, Citizens charges what it calls a "Sustained Overdraft Fee." This charge is in addition to the initial "Overdraft Fee" Citizens charges at the time the customer's account was first overdrawn. Citizens continues to charge the so-called "Sustained Overdraft Fee" over regular intervals until the customer repays Citizens' monetary advances by returning his or her account to a positive balance.

Fawcett acknowledges that the initial "Returned Item Fee" and the "Overdraft Fee," are "fees" Citizens charges for the service of responding when a customer causes a check or other debit to be presented when there are insufficient funds in the customer's account. However, she contends that the so-called "Sustained Overdraft Fee" is, in reality, interest that Citizens charges

2

to its customers for the use, forbearance, or detention of the money it has "loaned" to its customer by advancing the funds necessary to pay the overdraft. She contends that the only service or thing of value that Citizens provides in exchange for the so-called "Sustained Overdraft Fee" is the continued use of the funds it previously loaned to the customer, which are still owed by the customer to Citizens. Thus, according to Fawcett, the "Sustained Overdraft Fee" is, in fact, an interest charge. The Act limits the interest rate which a national bank such as Citizens can charge its customers. Fawcett argues that the annualized interest rate which Citizens charges customers in the guise of "Sustained Overdraft Fees," is substantially greater than the maximum interest rate that the Act permits Citizens to charge.

<u>Citizens' Motion to Compel Arbitration</u>

Citizens, invoking the Federal Arbitration Act, 9 U.S.C. § 2 *et seq.* ("FAA"), asserts that because the parties have an agreement to arbitrate, this Court must compel arbitration and stay or dismiss Fawcett's claims pending arbitration. Fawcett argues that she was never party to the agreement to arbitrate because Citizens cannot establish that she was ever provided a copy of the agreement to arbitrate and assented to it.

<u>*Facts Relating to the Motion to Compel Arbitration*</u>

On or about July 11, 2013, Fawcett opened a checking account (the "Account") with Citizens. At the time that she opened the Account, Fawcett signed a signature card which included the following statement:

> By signing below, I acknowledge that I have read and understood [Citizens'] Deposit Account Agreement and related fee schedule… each as amended from time to time (all collectively and each individually referred to as "the Agreement"). By signing below, I agree to all the terms of the Agreement.

At the time Fawcett opened her account, she was provided a Citizens' Personal Deposit Account Agreement ("PDAA") which included the terms and conditions

3

applicable to her account. By her signature on the signature card, Fawcett agreed to the terms of the PDAA as it would be amended from time to time.

The PDAA[1] states:

> **Our Agreement with You**
>
> This Personal Deposit Account Agreement is the agreement that governs each personal deposit account you have opened with us. This agreement replaces all previous personal deposit account agreements. Please read it carefully and retain it for future reference. By providing a written or electronic signature on a signature card or other agreement to open your account or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms contained in this agreement. This agreement refers to and includes Personal Account Fees and Features Guide and other disclosures, agreements and amendments that we may provide to you. All may contain information on fees that apply to your account.

*PDAA*, at p. 2.

The PDAA was in effect during the entire relevant time period (August 2015 to January 2017) when Fawcett incurred sustained overdraft fees, and remains in effect as of the current date. The PDAA contains the following agreement to arbitrate ("Arbitration Agreement") that provided the customer with the ability to cancel or opt out of the Arbitration Agreement:

> Arbitration Agreement
>
> This section constitutes the Arbitration Agreement between you and us. READ THIS SECTION CAREFULLY AS IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL DISPUTES BETWEEN YOU AND US ARE RESOLVED. If you do not opt out, for a dispute subject to arbitration, neither you nor we will have the right to: (1) have a court or a jury decide the dispute; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action in court or in arbitration; or (4) join or consolidate a claim with claims of any other persons. Arbitration procedures are simpler and more limited than rules applicable in court. The decision of the arbitrator is generally final and binding.
>
> You have the right to cancel or opt out of this Arbitration Agreement as set forth below.

---

[1] A copy of the PDAA in effect during the relevant time period is attached as *Ex. B* the *Decl. of Martin F. Crowe* (Docket No. 14).

….

**Binding Arbitration**

If you have a dispute with us, and we are not able to resolve the dispute informally, you and we agree that upon demand by either you or us, the dispute will be resolved through the arbitration process as set forth in this part. A "claim" or "dispute," as used in this Arbitration Agreement, is any unresolved disagreement between you and us, arising from or relating in any way to the Account Agreement (including any renewals, extensions, addendums or modifications) or the deposit relationship between us. It includes any disagreement relating in any way to services, accounts or any other matters; to your use of any of our banking facilities; or to any means you may use to access your account(s). Any claims or disputes arising from or relating to the advertising of our services, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of on what theory they are based, whether they seek legal or equitable remedies, or whether they are common law or statutory (federal or state) claims. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. Disputes include disagreements about the meaning, application or enforceability of this arbitration agreement.

**TRIAL WAIVER**

YOU AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A JURY TRIAL AND TRIAL BEFORE A JUDGE IN A PUBLIC COURT. As the sole exception to this arbitration agreement, you and we retain the right to pursue in small claims court (or an equivalent state court) any dispute that is within that court's jurisdiction, so long as the disputes remain in such court and advance only an individual claim for relief. If either you or we fail to submit to binding arbitration of an arbitrable dispute following lawful demand, the party so failing shall bear all costs and expenses incurred by the other in compelling arbitration.

**CLASS ACTION AND CLASS ARIBITRATION WAIVER**
NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY COURT ACTION OR ARBITRATION, OR TO INCLUDE IN ANY COURT ACTION OR ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY, UNLESS THOSE PERSONS ARE JOINT ACCOUNT OWNERS OR BENEFICIARIES ON YOUR ACCOUNT. This is so whether or not the claim has been assigned.

**Arbitration Procedures**

You or we may submit a dispute to binding arbitration at any time, regardless of whether a lawsuit or other proceeding has been previously commenced.
….

If you initiate the arbitration, you must notify us in writing at:

Citizens Bank
PO Box 6067
Providence, RI 02940-6067

If we initiate the arbitration, we will notify you in writing at your last known address in our file.

….

**Right to Cancel or Opt Out of This Arbitration Agreement**

You may opt out of this Arbitration Agreement to resolve any claim or dispute by arbitration. To opt out of this Arbitration Agreement, you must
send us written notice of your decision within forty-five (45) days of the opening of your account. Such notice must clearly state that you wish to
cancel or opt out of the Arbitration Agreement section of this Account Agreement. It should include your name, address, account name, account
number and your signature and must be mailed to:

Citizens Bank
PO Box 6067
Providence, RI 02940-6067

This is the sole and only method by which you can opt out of this Arbitration Agreement. Your exercise of the right to opt-out will not affect any
remaining terms of this Account Agreement and will not result in any adverse consequence to you or your account. You agree that our business records
will be final and conclusive evidence with respect to whether you cancelled or opted out of this arbitration agreement in a timely and proper fashion.

*Id.*, at pp. 28-31.

Fawcett never sent Citizens notice that she was cancelling or opting out of the Arbitration Agreement. Fawcett continued to make use of Citizens' deposit account services from August 2015 through January 2017, the time period during which the Complaint alleges

6

sustained overdraft fees were incurred.

The terms of the PDAA provided that its terms and conditions could be amended by Citizens, as follows:

> Changes to Agreement
>
> We may, in our sole discretion, change any term or condition of this agreement, including any fees and features of your account, at any time. Any such change will generally be effective immediately without notice to you unless we are required by applicable law to provide you with advance written notice of the proposed changes. In such instances, those changes will be effective immediately after we have provided you with the required advance written notice following the effective date stated in such notice. If any required advance notice is returned to us as undeliverable because of a change in your address about which you have not notified us in writing or for any other reason which is not our fault, the changes described in that notice are still binding on you. If you do not agree to the changes, you may terminate this agreement in accordance with the terms of this agreement. You will be deemed to accept any changes to this agreement if you continue to maintain or use your account after the effective date of any changes. This agreement may not be amended or modified orally.

*Id.*, at p. 33.

*Governing Legal Principles*

At its most basic level, the FAA is a "congressional declaration of [the] liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927 (1983). Agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Moreover, the FAA "ensure[s] judicial enforcement of privately made agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S. Ct. 1238 (1985), and "place[s] such agreements upon the same footing as [any] other contract[]." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271, 115 S. Ct. 834 (1995). *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405, 87 S. Ct. 1801 (1967) ("[I]t is clear beyond

dispute that the [FAA] is based upon and confined to the incontestable federal foundations of control over interstate commerce and over admiralty") (internal quotations and citations omitted); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage").

When a party seeks either to compel arbitration under Section 4 or to stay proceedings under Section 3, they must satisfy four requirements: "[1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope." *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003); 9 U.S.C. §§ 3-4. Only if all prongs of the test are satisfied will the court grant a motion to compel arbitration. *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008)(internal citations and citation to quoted case omitted). Arbitration is also subject to waiver and therefore, the court must determine that the party seeking to compel arbitration has not waived its right to do so. *Id.*

Whether a claim falls within the reach of a particular arbitration clause is a question of law for the court, bearing in mind that federal policy favors arbitration. *Id.* (FAA establishes as matter of federal law, that any doubts concerning scope of arbitrable issues should be resolved in favor of arbitration). At the same time, the court must be cognizant that "'arbitration is simply a matter of contract between the parties; it is a way to resolve disputes-but only those disputes-that the parties have agreed to submit to arbitration' … . Therefore, '[w]hen deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts.' " *Id.* (internal citation and citations to quoted

cases omitted). If it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law. *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927. "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir.1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347 (1960)). Finally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, *whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability.*" *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941 (emphasis added).

### Application of the Law to this Case

Because it is the most straight forward issue, the Court will address the fourth element first, *i.e.*, whether the claim(s) asserted fall within the scope of the Arbitration Agreement. Fawcett has filed a Complaint alleging that the Sustained Overdraft Fee charged by Citizens is actually interest charged at a rate which violates the Act. It cannot reasonably disputed that this alleged claim falls within the scope of the Arbitration Agreement (and Fawcett does not assert otherwise).

Nevertheless, Plaintiff asserts that she cannot be compelled to arbitrate because Citizens cannot prove she was a party to an arbitration agreement. More specifically, she asserts that Citizens has not established that a copy of the 2015 version of the PDAA (the version which contained the Arbitration Agreement) was ever provided to her. She also contends that there is no evidence she ever assented to the arbitration provision, and that the Arbitration Agreement is

9

unenforceable because Citizens retained the "unilateral and unfettered right to modify the agreement's terms." *Pls. Opp. to Def's Mot. To Dismiss And/Or Stay and To Compel Arbitration*, (Docket No. 22) at p. 1. As to Ms. Fawcett's latter contentions, there is no dispute that when she opened her checking account, she signed an signature card which provided that she agreed to be bound by PDAA, as amended and in effect from time to time. Under Massachusetts law, which governs this case, formation of a contract requires an offer, acceptance and consideration, and is judged by the parties' objective conduct, not their subjective intent. *See Bekele v Lyft, Inc.*, 199 F.Supp.3d 284, 294 (D.Mass. 2016). Ms. Fawcett's suggestion that despite her having expressly agreed to be bound by subsequent amendments to the PDAA, Massachusetts law requires that she somehow "manifest" her assent to the Arbitration Agreement in order to be bound thereby is meritless. However, that does not end the inquiry. Ms. Fawcett is also, essentially, asserting that because she did not receive notice of the amendment to the PDAA, there was never a "meeting of the minds" regarding the Arbitration Agreement. *See Nat'l Fed'n of the Blind v. Container Store Inc.*, Civ. Act. No. 15-12984, 2016 WL 4027711 (D.Mass. Jul. 27, 2016). I agree. The Arbitration Agreement by its terms gives Fawcett the right to opt out. If she never received a copy of the Arbitration Agreement, that right is meaningless. Thus, while Ms. Fawcett need not communicate her assent to be bound by the Arbitration Agreement to Citizens, for example, by sending written acceptance or, perhaps by continuing to use her account, she still must be provided notice of the Agreement to Arbitrate in order for a contract to have been formed. Nowhere in its submissions does Citizens suggest that it sent Ms. Fawcett a copy of the amendment to the PDAA adding the Arbitration Agreement, or that it otherwise communicated the amendment to her. Indeed, the PDAA provides that it may be amended without notice.

Because it is unclear to the Court whether Ms. Fawcett received notice of the amendment to the PDAA adding the Arbitration Agreement, I cannot make a definitive ruling on Citizens' motion to compel arbitration. Therefore, on or before March 21, 2018, Citizens shall provide the Court and Ms. Fawcett with whatever evidence it has in its possession to support a finding that it communicated the amendment to the PDAA adding the Arbitration Agreement to Ms. Fawcett and the time period during which it did so. If Citizens fails to provide the necessary evidence by that date, then its motion to stay and compel arbitration shall be denied. The Court will then address Citizens' motion to dismiss for failure to state a claim.

A hearing will be held on Monday, April 9, 2018, at 2:00 p.m. to address Citizens' motion to compel and/or dismiss for failure to state claim.

## Supplemental Briefing

Ms. Fawcett contends that the Arbitration Agreement is "illusory" because Citizens retains the right to unilaterally change its terms, or cancel it altogether, without prior notice to the account holder. As Ms. Fawcett points out, Citizens retains the right, "in its sole discretion," to amend or terminate any term or condition of the PDAA without notice, unless applicable law would require advance notice. The Fifth Circuit has held that under Texas law, an arbitration agreement is illusory, thus not enforceable, "'[w]here one party has the unrestrained unilateral authority to terminate its obligation to arbitrate.'" *Nelson v. Watch House Intern, L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016)(alteration in original)(citation to quoted case omitted). Where, however, the agreement provides that it cannot be terminated or amended unilaterally without notice, or if the amendments would only apply prospectively, the agreement to arbitrate is not illusory. *Id.* At least two judges in this District have found that where the party seeking to enforce the arbitration provision retained the unilateral discretion to alter its terms, without

notice, the agreement to arbitrate is "illusory and unenforceable." *See Nat'l Fed'n of the Blind v. Container Store Inc.*, Civ. Act. No. 15-12984, 2016 WL 4027711 (D.Mass. Jul. 27, 2016)(adopting Report and Recommendation)(after noting that parties disagreed as to whether Texas or Massachusetts law applies, court found no material difference between states and applied Massachusetts law); *Domenichetti v. Salter School, LLC.*, Civ.Act.No. 12-11311-FDS, 2013 WL 1748402 (D.Mass. Apr. 19, 2013); *see also Douglas v. Johnson Real Estate Investors, LLC*, 470 Fed.Appx. 823 (11th Cir. 2012)(court held that under Massachusetts law promise to arbitrate was illusory and unenforceable where employer retained right to unilaterally amend the agreement without notice to employee). In reaching their conclusions, both Judge Saylor of this Court in *Domenichetti* and the Eleventh Circuit in *Douglas* cited *Jackson v. Action for Bos. Cmty. Dev., Inc.*, 403 Mass. 8, 525 N.E.2d 411, 414 (1988). Courts applying other states' laws have reached conflicting conclusions. *See e.g., In re Zappos.com, Inc*. 893 F.Supp.2d 1058, 1063 (D.Nev. 2012) and numerous federal court decisions listed therein (most federal courts that have considered issue have haled that if party retains unilateral, unrestricted right to terminate arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from or even notify other party to contract); *but see Valle v. ATM Nat'l LLC*, No. 14-cv-7993(KBF), 2015 WL 413449, at (S.D.N.Y. Jan. 30, 2015)(New York law limits party's unfettered right to amend agreement and therefore, although agreement provides that employer has unilateral right to modify agreement without notice, arbitration provision is not, as a matter of law, unenforceable); *John v. Hanlees Davis, Inc*., No. 2:12-02529 WBS AC,2013 WL 3458183 at *6 and n. 4 (E.D.Cal. Jul. 9, 2013 )(same, but applying California law).

     Citizens, on the other hand, asserts that because the Arbitration Agreement contains a delegation provision, which delegates to the arbiter, the question of whether the Arbitration

Agreement is enforceable is to be left to arbitration. *See Rent-A-Center, West, Inc. v. Jackson*, -- 561 U.S.63, 130 S.Ct. 2772 (2010). For that reason, Citizens argues, the issue of whether the Arbitration Agreement is illusory is not for the Court to decide.

The Court notes that the "opt out provision" of the Arbitration Agreement provides that an account holder may opt out of the Arbitration Agreement "within forty-five (45) days *of the opening of your account*." Neither party has raised the issue of whether such language suggests that the Arbitration Agreement was not intended to apply retroactively to account holders such as Ms. Fawcett, who opened their accounts before the PDAA was amended to include the Arbitration Agreement.

On or before April 2, 2018, the parties may file supplemental memoranda, not to exceed 15 pages, on the issues of whether the Arbitration Agreement is illusory is for the Court or the arbiter, and whether the Arbitration Agreement applies retroactively (assuming that I find that Citizens provided adequate notice of the amendment to add the Arbitration Agreement to Ms. Fawcett.)

<u>Plaintiff's Motion for Class Certification and Discovery</u>

I am denying without prejudice Plaintiff's Motion for Class Certification And To Hold Motion In Abeyance Pending Class Discovery, as I find that from the standpoint of judicial efficiency, it does not make sense to address the issues raised by that motion until I have ruled on Citizens' motion to dismiss and/or to stay and compel arbitration.

**<u>Conclusion</u>**

It is hereby Ordered:

Plaintiff's Motion for Class Certification And To Hold Motion In Abeyance Pending Class Discovery (Docket No. 5) is ***denied***, without prejudice.

A hearing on Defendant Citizens Bank, N.A.'s Motion To Dismiss And/Or Stay And To Compel Arbitration (Docket No. 12) shall be held on April 9, 2018 at 2:00 p.m.

                                              */s/ **Timothy S. Hillman***
                                              TIMOTHY S. HILLMAN
                                              ISTRICT JUDGE